IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NORTHWESTERN UNIVERSITY,            ) | |
| )  | |
| Plaintiff,     ) | |
| v.                                              ) | |
| )   C.A. No. 21-149 (MN) | |
| UNIVERSAL ROBOTS A/S and      ) | |
| UNIVERSAL ROBOTS USA, INC.,   )   **PUBLIC VERSION** | |
| ) | |
| Defendants.     ) | |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM
JEREMY A. TIGAN REGARDING MOTION TO COMPEL
UNIVERSAL ROBOTS' INVALIDITY CONTENTIONS**

OF COUNSEL:

Nevin M. Gewertz
Rebecca T. Horwitz
Katherine E. Rhoades
Mac LeBuhn
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL  60654
(312) 494-4400

Meg E. Fasulo
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO  80202
(303) 592-3100

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Plaintiff*

**Confidential Version Filed: September 15, 2022**
**Public Version Filed: September 22, 2022**

Dear Judge Hall:

Northwestern alleges that Universal Robots infringes three patents: the '336, '508, and '317 patents. Universal Robots responds that the asserted patents are invalid. Its initial invalidity contentions—set forth in a 3,236-page cover pleading and 60,640 pages of claim charts—identify more than 60 distinct prior art references and six prior art systems.

For such a large submission, the invalidity contentions provide little indication of Universal Robots' actual invalidity theories. Across nearly 64,000 pages, Universal Robots hides behind tens of thousands of obviousness combinations and disclaimers, making it impossible to know which invalidity theories Universal Robots intends to rely on. Universal Robots' contentions fail at their basic task: to inform the patent owner of invalidity theories at issue, including "which specific combinations are being asserted against them." Ex. A, *Astellas Pharma Inc. v. Sandoz Inc.*, 1:20-cv-01589-JFB-CJB, D.I. 343 (D. Del. Apr. 21, 2022). Northwestern therefore asks the Court to compel Universal Robots to provide sufficiently specific contentions showing how the references, alone or in particular combinations, disclose each claim it challenges.

**Universal Robots Has Not Identified Specific Obviousness Combinations:** Universal Robots contends that its 64 references can be combined in a virtually limitless fashion to yield the claims of the asserted patents. For example, each chart says generally that the reference renders the claims invalid "under 35 U.S.C. §§ 102 and/or 103." *See, e.g.*, Ex. B, Goldenberg Chart at 2. Using the Goldenberg chart as an example, Universal Robots explains its obvious combinations by saying:

> To the extent that Plaintiff contends that Goldenberg does not disclose one or more limitations of the asserted claims, each such limitation would have been obvious in view of the teachings of Kitchen[1] in combination with one or more of the following references, including as described in the cover document accompanying Universal Robots's invalidity contentions[.]

*Id.* The claim charts do not specify any particular combinations of interest. Nor does the cover pleading, which repeats:

> To the extent that Plaintiff contends that Goldenberg alone fails to teach one or more limitations addressed by the accompanying claim chart, such limitations are disclosed, taught, and/or rendered obvious by the other references and/or the combined teachings of the references identified for the corresponding limitation in Sections VIII.A.1, VIII.B.1, VIII.C.1, and IV, as set forth herein and in UR's accompanying claim charts.

Ex. C, Universal Robots Initial Invalidity Contentions at 2732.

In that cover document, Universal Robots then suggests that the claims are obvious based on "Goldenberg in view of one or more of the secondary references described in" about 50 *other*

---

[1] Every claim chart refers to "Kitchen," a name that is never defined and does not appear to be a reference applicable to the contentions as they stand.

sections of that cover document, which in turn encompass at least 63 other references. Ex. C at 2732–37 (listing other sections Northwestern should look at to locate the references to be combined with Goldenberg). This doesn't even identify specific other *references* that could be combined but, instead, presents categories of references. And Universal Robots also "reserves the right to rely on combinations of the combinations[.]" *Id.* at 2732.

The proliferation of possible obviousness combinations with Goldenberg doesn't stop there. Universal Robots says that these are just the combinations in which Goldenberg is used as a primary reference. *Id.* But Universal Robots also says that "any one or more of the secondary references could be treated as a primary reference and combined with Goldenberg" as a secondary reference. *Id*. Universal Robots says that these are merely "exemplary combinations pertaining to particular claim elements," without stating how many other undisclosed combinations might exist. *Id.*; *see also id.* at 3–4 ("UR further reserves the right to rely on . . . other publications . . . to establish bases for combinations of certain cited references that render the claims obvious.").

These contentions result in an incalculable number of combinations that use Goldenberg: Universal Robots contends that some claims are anticipated by Goldenberg, some may be rendered obvious by Goldenberg alone, some may be rendered obvious by Goldenberg in combination with one other reference (selected from a group of more than 60), some may be rendered obvious by Goldenberg in combination with two other references (again selected from a group of more than 60), and so on. Taking its contentions at face value, there are tens of thousands of conceivable ways (if not many more) that Universal Robots may intend to use Goldenberg as an invalidating reference. And these same non-specific disclosures are seen across every claim chart and in the corresponding cover document. *See, e.g.*, *id.* at 2800–06 (combining Otani with 62 categories); *id.* at 2869–74 (combining Villaret with 62 categories); Ex. D, Otani Chart; Ex. E, Villaret Chart. The effect amounts to nothing more than a list of 60+ references which may be combined with any and all other references that appear throughout 64,000 pages of "contentions." If these deficiencies weren't enough, Universal Robots compounds the lack of specificity by also failing to point to particular relevant disclosures *within* each document.

**Universal Robots Has Not Identified Specific Disclosures Within the References:** Even if Universal Robots had identified the specific obviousness combinations that it asserts, its invalidity contentions still fail to point to the disclosures that matter within each reference. For example, Universal Robots simply pastes the asserted references, often in their entirety, directly into the contentions. In the Goldenberg chart, Universal Robots cites the following passages from Goldenberg for the preamble of the '317 patent: Goldenberg at Title, Abstract, 1:5–10, 1:13–26, 1:27–39, 1:40–63, 1:64–2:5, 2:8–15, 2:16–25, 2:26–37, 2:38–47, 2:48–55, 3:3–14, 3:15–38, 3:40–44, 3:45–47, 3:48–49, 3:50–51, 3:52–53, 5:62–63, 3:64–65, 4:1–3, 4:4–6, 4:14–20, 4:21–35, 4:52–62, 4:63–5:13, 5:46–57, 7:1–12, 7:13–22, 7:23–27, 7:28–33, 7:34–47, 7:48–59, 7:60–66, 8:1–5, 8:9–17, 8:18–40, 8:51–66, 9:1–9, 9:11–32, 9:33–34, 9:35–39, 9:40–43, 9:44–46, 9:47–54, 9:55–64, 9:66–10:10, 10:11–18, 10:20–29, 10:30–38, 10:39–46, 10:47–60, 10:62–65, 11:1–8, 11:10–27, 11:28–34, cl. 1, 18–21, 26. Ex. B at 3–18. The cited passages of Goldenberg for this limitation alone amount to nearly the entirety of that patent. *See* Ex. F, Goldenberg Patent (annotated to show cited portions). Despite the many pages of block quotes, the chart lacks any narrative explanation for why Universal Robots believes these passages are relevant or teach that limitation of the claim. And Universal Robots' overreliance on block quotes is not limited to Goldenberg. In the Takagi chart, for example, Universal Robots appears to have quoted nearly the entire reference for each

claim element of each patent. Ex. G, Takagi Chart. This approach yields a 6,164-page claim chart that does not reveal anything about Universal Robots' actual invalidity theories.

And even where Universal Robots pastes in block quotes that are less than the entire disclosure, Universal Robots tells Northwestern not to rely on its specific citations. Rather, Universal Robots says repeatedly that the charts are only "representative examples" and "merely illustrative[.]" Ex. B, Goldenberg Chart at 2. In its cover document, Universal Robots says the same: "[T]he cited portions are only examples[.]" Ex. C at 3. "[W]here a portion of a paragraph is cited, UR reserves the right to rely on the entire paragraph." *Id.* "UR further reserves the right to rely on uncited portions of the prior art references[.]" *Id.*

The extensive block quotes and numerous disclaimers undo anything that may be gleaned from Universal Robots' invalidity contentions. The effect is the same as with the obviousness combinations themselves: Universal Robots is unwilling to disclose anything more than that it challenges the patents based on some combination of some teachings from 60+ references.

**Northwestern Provided Detailed and Meaningful Notice of Its Infringement Theories:** In contrast to the invalidity contentions it received, Northwestern provided Universal Robots with tailored infringement contentions relating to a manageable number of patent claims. The asserted patents include 85 claims total. Following careful review of Universal Robots' core technical documents, Northwestern narrowed the asserted claims to 54 and prepared claim charts showing how the accused products infringe. Ex. H, Northwestern's Initial Infringement Contentions; Ex. I, '336 Patent Chart; Ex. J, '508 Patent Chart; Ex. K, '317 Patent Chart.

The infringement contentions were detailed enough to provide notice of Northwestern's infringement position, as Universal Robots' invalidity contentions reveal. Universal Robots has not objected to Northwestern's infringement contentions. Its invalidity contentions were "based on Plaintiff's apparent interpretation of the claims as evidenced by Plaintiff's Initial Infringement Contentions[,]" an interpretation that Universal Robots may disagree with but can understand. Ex. C at 4. For example, the infringement contentions are sufficiently concrete to allow Universal Robots to identify a "wide variety of features not accused by Plaintiff." *Id.* at 3193. Northwestern has provided notice of its theories. Universal Robots has not.

**The Court Should Order Universal Robots to Serve Specific Invalidity Charts:** Universal Robots' current invalidity contentions leave Northwestern guessing as to its invalidity theories. These contentions seem to be designed to obfuscate and reserve all rights to rely on some needle-in-a-haystack argument down the road. That is not the purpose of invalidity contentions.

Northwestern asks the Court to require Universal Robots to specify which invalidity theories it is pressing. At a minimum, Northwestern suggests that the Court require Universal Robots to list its "prior art arguments" and limit the total number of prior art arguments to a reasonable number (e.g., 150). In doing so, Northwestern requests that the Court adopt the definition of "prior art argument" used by other courts in this District. Ex. L, *Confluent Surgical, Inc. v. HyperBranch*, 1:17-cv-688-LPS-CJB (D. Del. Oct. 30, 2017). This would "allow Plaintiffs to more meaningfully consider Defendant's invalidity contentions" as it streamlines its asserted claims. *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, 223 F. Supp. 3d 202, 205 (D. Del. 2016).

3

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

JAT:lo
Attachments
cc:    Clerk of the Court (via hand delivery)
        All Counsel of Record (via electronic mail)

4